UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**DARREN CHESTER**,

    Plaintiff,

v.                                                                    No. 14-CV-92 JAP/KK

**TANCORDE FINANCE, INC.**,

    Defendant.

## MEMORANDUM OPINION AND ORDER

On December 3, 2014, Plaintiff Darren Chester filed PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (Doc. No. 25) (Motion to Certify). On December 17, 2014, Defendant Tancorde Finance, Inc. filed a RESPONSE TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (Doc. No. 28) (Response). On December 30, 2014, Plaintiff filed PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR CLASS CERTIFICATION (Doc. No. 30) (Reply). For the following reasons, the Court will grant the Motion to Certify.

    **I.**     **Background and procedural history**

Defendant Tancorde Finance, Inc. extends short-term credit to the public in Gallup, New Mexico.[1] This case concerns Defendant's alleged failure to comply with the requirements of the Truth in Lending Act of 1968 ("TILA"), 15 U.S.C. § 1601 *et seq.*, and 12 C.F.R. § 226 *et seq.* (also known as "Regulation Z"). Two specific loan products Defendant offers are at issue in this putative class action: "holiday" and "instant cash" loans.

"Holiday" loans are accompanied by a "finance charge" which is 30% of the loan principal. In addition to the finance charge, Defendant assesses a $55 "application fee" which

---

[1] The Court draws these facts from Plaintiff's Amended and Supplemental Class Action Complaint (Doc. No. 4), which is accepted at face value as far as Plaintiff's Motion to Certify is concerned. *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010).

Defendant does not disclose as a component of the loan's finance charge or the loan's annual percentage rate ("APR"). The loan interest and principal are repaid with deductions from the debtor's tax refund, no later than the first day of the coming March. Defendant applies for income tax refunds on behalf of its customer and then deducts the loan principal and any interest from the refund before giving the balance to the customer. Defendant uses the same loan agreement form for all of its holiday loan customers and processes all applications for holiday loans in the same fashion.

Plaintiff applied for and obtained two separate holiday loans on November 16 and December 10, 2013. Plaintiff alleges that the loan agreements he signed violated TILA because they (1) do not disclose the finance charge, amount financed, number of payments, due date for payments and security interest for the loans; (2) fail to disclose an accurate APR; and (3) fail to give meaningful disclosure of credit terms. *See* Supplemental Class Action Complaint at 3.

Defendant's "instant cash" loans include a similar "finance charge" that equals 15% of the loan principal. Defendant assesses an additional $15.16 "EIC Admin fee" and a $8.50 "credit check fee." Plaintiff alleges that these charges were also finance charges that should have been included in the disclosed finance charge and the loan APR. Defendant files a tax return on behalf of its "instant cash" loan customer, and then pays itself the loan interest and associated fees before disbursing any remaining amount of the tax refund to the customer. Like "holiday" loans, Defendant uses the same forms and application processes for all of its "instant cash" loan customers.

Plaintiff alleges that Defendant's "instant cash" loans violate TILA for largely the same reasons the "holiday" loans violate TILA. Plaintiff further alleges that the "instant cash" loans forms obscure key disclosures about the cost of credit with misleading terms like "MPR"

("monthly percentage rate"). *See* Supplemental Class Action Complaint at 5. Plaintiff also argues that Defendant issues "instant cash" loans covering a period of time that is much longer than the amount of time it takes to obtain a tax refund from the Federal government. Thus, even when the U.S. Treasury sends Defendant a customer's tax refund early in the loan cycle, Defendant deducts the maximum amount of interest from the refund. *See* Supplemental Class Action Complaint at 6–7.

Plaintiff has filed this putative class action seeking statutory damages, costs and fees on behalf of "all natural persons who entered into 'holiday loans' or 'Instant Cash' loans, or both, with Defendant, beginning one year prior to the filing of the Complaint in this case…." Supplemental Class Action Complaint at 8.

**II.     Legal standard**

Under FED. R. CIV. P. 23, a plaintiff may sue on behalf of all members of a class only if (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims of the plaintiff as class representative are typical of the claims of the class ("typicality"); and (4) plaintiff as class representative and plaintiff's counsel will fairly and adequately protect the interests of the class ("adequacy"). FED. R. CIV. P. 23(a).

If these requirements are met, a court may allow class representation for claims seeking monetary relief if questions of law or fact predominate over any questions affecting only individual members ("predominance") and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy ("superiority"). FED. R. CIV. P. 23(b)(3).

**III.    Discussion**

1. Rule 23(a) factors

    a. Numerosity

Plaintiff contends that the number of members of Plaintiff's proposed class exceeds 9,500, and therefore joinder of all members would be impractical. Motion to Certify at 5. Defendant appears to concede, *see* Response at 5, that Plaintiff's proposed class satisfies Rule 23's numerosity requirement. The Court concludes that Plaintiff's proposed class definition satisfies this requirement.

    b. Commonality

This factor assesses whether the issue raised by the named plaintiff is common to the class as a whole as well as whether the issue is "capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

Plaintiff argues that deposition testimony and various answers to requests for admission conclusively establish that there are questions fact common to the class that also give rise to common questions of law. Plaintiff cites the following facts:

> (1)    Defendant used the same form for "holiday loan" applications in November and December 2013;
> (2)    Each "instant cash" loan was secured by the applicant's income tax refunds;
> (3)    Defendant used the same form for every "instant cash" loan from January through March 2014;
> (4)    Defendant's "holiday loans" used the same loan agreement form in November and December 2013;[2]
> (5)    Defendant issued "instant cash" loans in 2014 using the same loan agreement form;[3]

---

[2] It is unclear how this fact is different from the first fact, but the Court includes it for the sake of providing a complete summary of Plaintiff's recitation of common facts.

> (6) The finance charges on each "holiday" and "instant cash" loan to Plaintiff "consist[] solely of interest charged on the loan," and do not include the "application fees" Defendant charged class members;
> (7) Plaintiff paid the $55 application fee each time he obtained a "holiday loan;"
> (8) Defendant charges the $55 application fee as a matter of course for first- and second-time "holiday loan" applicants;
> (9) The $55 application fee is not included in the finance charge or APR listed on loan forms;
> (10) Plaintiff took out two holiday loans under Defendant's standard loan procedures;
> (11) Defendant charged Plaintiff and all other class members a mandatory $8.50 fee for a credit report before extending them an "instant cash" loan;
> (12) and the $8.50 credit report fee is not included in the finance charge or APR amounts listed on loan forms.

Motion to Certify at 6–7. Plaintiff asserts that the facts above give rise to several questions of law common to the class: whether Defendant's $55 application and $8.50 credit check fees are "finance charges" under TILA; whether Defendant violated TILA by not disclosing the finance charge, APR, and other information on loan agreement forms; whether the "holiday" and "instant cash" loan forms comply with TILA disclosure and format requirements; whether Defendant took undisclosed security interests; and whether Defendant understated the finance charge and APR on its loans by using a two-month interest calculation. Motion to Certify at 7–8.

The Court is not entirely convinced that the admissions and deposition testimony Plaintiff cites conclusively establish common questions of fact and law that govern the outcome of this case. Defendant has only admitted to using the same loan forms in November and December 2013, not the entire period covered by Plaintiff's proposed class definition. Further, Defendant's practice of refunding the $55 application fee for second-time (and presumably any subsequent) applications raises potential questions of fact and law that are not common to the class. For

---

[3] It is unclear how this fact is different from the third fact, but the Court includes it for the sake of providing a complete summary of Plaintiff's recitation of common facts.

example, whether a class member is entitled to statutory damages for the assessment of application fees that are later refunded would be a question of law that could in turn require individualized determinations about whether Defendant refunded the application fee to any given class member based on the number of times the class member had applied for credit.

However, Defendant has "concede[d] that Plaintiff can meet the requirements of…commonality…." Response at 5 (citing FED. R. CIV. P. 23(a)(2)). And even if there are individual questions, they are properly determined under Rule 23(b)(3)'s "predominance" inquiry. Under Rule 23(a)'s commonality factor, there is a controlling question of law common to all class members: whether Defendant's loan forms and disclosures complied with TILA. The Court therefore finds that Plaintiff has satisfied Rule 23(a)'s "commonality" requirement.

    c. Typicality

Rule 23(a)(3) requires a named plaintiff to show the plaintiff's claims are typical of the class the plaintiff seeks to represent. *Rector v. City & County of Denver,* 348 F.3d 935, 949 (10th Cir. 2003). "[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Adamson v. Bowen,* 855 F.2d 668, 676 (10th Cir. 1988). Defendant concedes that Plaintiff's claims are typical of other class members'. Response at 5. The Court concludes that the proposed class covers people who share Plaintiff's entitlement, if any, to recovery from Defendant under TILA.

    d. Adequacy

Rule 23(a)(4) requires the Court to investigate any potential conflicts of interest between the named plaintiff and the class the named plaintiff seeks to represent in order to ensure the named plaintiff's representation is aligned with the class and the named plaintiff's attorneys will

"vigorously prosecute the case" on behalf of the class, not just the named plaintiff. *Garcia v. Tyson Foods*, 255 F.R.D. 678, 689 (D. Kan. 2009). In other words, "adequacy" refers to two separate questions: whether class counsel is competent to represent the class and whether the class representative's interests are aligned with class members in general. *Ashe v. Bd. of Elections in City of New York*, 124 F.R.D. 45, 50 (E.D.N.Y. 1989).

The Court has reviewed the curriculum vitae of Plaintiff's counsel—Mssrs. Charles M. Delbaum and Richard N. Feferman, and is satisfied that they will serve as adequate counsel for the proposed class. Although this Court is unacquainted with Mr. Delbaum, Mr. Feferman has been a mainstay in successful consumer class actions in this District, and the Court is confident he will adequately represent the class and vigorously prosecute this case to its conclusion.

The chief dispute over the adequacy of representation centers on concerns over the named Plaintiff's ability to adequately represent the interests of the class as a whole. Defendant argues that Plaintiff is an inadequate class representative for three reasons: First, Plaintiff has participated in a similar lawsuit against a different defendant. Second, Plaintiff testified in his deposition that he did not read or ask questions about any of the loan application forms he signed. Third, Plaintiff offered inconsistent and allegedly false deposition testimony about when he expected to receive his tax refund and when he consulted with his counsel with regard to filing this lawsuit.

*Participation in other lawsuits*. Plaintiff's participation in other consumer class action lawsuits, without more, is irrelevant to the adequacy determination. A named plaintiff is only inadequate if he has a conflict of interest that relates to the subject matter of the lawsuit itself. *Alvarado Partners, L.P. v. Mehta*, 130 F.R.D. 673, 676 (D. Colo. 1999). Defendant has offered no evidence that Plaintiff's participation in another lawsuit compromises his ability to represent

this proposed class. The other lawsuit has settled, and there is no relationship between the defendant in that lawsuit and this Defendant. The Court concludes that any conflict of interest is at best speculative, and therefore cannot justify denial of a certification motion. *Foster v. Apache Corp.*, 285 F.R.D. 632, 645 (W.D. Okla. 2012).

*Failure to read loan forms*. Defendant argues that Plaintiff would not adequately represent the interests of the proposed class because he did not read the loan forms before he signed them. Response at 2. Plaintiff replies that TILA imposes strict liability for failure to comply with disclosure and other requirements, and therefore Plaintiff's failure to read loan forms has no bearing on Defendant's compliance with the statute.

Defendant's argument on this point illustrates how the adequacy inquiry duplicates the commonality and typicality inquiries. *Eisen v. Carlisle and Jacqueline*, 391 F.2d 555, 563 (2d Cir. 1968). Defendant is essentially arguing that Plaintiff's failure to read loan forms means that his claims are unique or atypical of the class. But Plaintiff's failure to read the loan forms makes his claims if anything more typical of the class, given how often consumers tend to sign on the dotted line without reading complicated contractual provisions. More broadly, Defendant has not provided any authority for the proposition that Plaintiff's failure to read the loan forms is relevant to the claims or defenses at issue in this case. The Court therefore rejects Defendant's argument that Plaintiff is not an adequate class representative because he failed to read the loan forms.

*Inconsistent and allegedly false deposition testimony*. Whether a proposed class representative is honest and credible may have some bearing on the representative's ability to adequately represent absent class members. *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998) ("To judge the adequacy of representation, courts may consider the honesty and

trustworthiness of the named plaintiff." (citation omitted)). But there is an important qualification to this rule: generalized concerns about past illegal or unethical conduct have no bearing on the representative's adequacy. Instead, improprieties must relate to "material issues in the litigation in a way that might jeopardize [the class representative's] credibility with the fact finder at trial." William B. Rubenstein, Newberg on Class Actions § 3:68 (5th ed. 2014) (citing cases).

      Defendant argues that Plaintiff testified inconsistently or falsely on two subjects. Defendant points first to Plaintiff's testimony about when he expected to receive his tax refund. At a deposition, Plaintiff stated that it normally took three to four weeks to obtain a tax refund after signing an "instant cash" loan agreement. Doc. No. 28-1 at 10. Plaintiff later testified that it would take at least two weeks for the refund to arrive after he signed a "holiday loan" agreement. *Id.* Defendant argues that this inconsistent testimony relates to material issues in the litigation because Plaintiff's theory of TILA liability depends at least in part on proving that refund schedules issued by the IRS provide the best way to determine loan repayment schedules. *See* Response at 3 n. 1.

      Under 26 C.F.R. § 1026.17(c)(2), "[i]f any information necessary for an accurate disclosure is unknown to the creditor, the creditor shall make the disclosure based on the best information reasonably available at the time the disclosure is provided to the consumer, and shall state clearly that the disclosure is an estimate." Defendant argues that Plaintiff's knowledge of when he could reasonably expect to receive a tax refund is a material issue because community expectations about the timeline for receiving a tax refund might provide "the best information reasonably available" to the creditor and therefore support the alleged 2-month loan repayment period for "instant cash" loans.

The "official interpretation" of 26 C.F.R. § 1026.17(c)(2) states that "[t]he "reasonably available" standard requires that the creditor, acting in good faith, exercise due diligence in obtaining information." Consumer Finance Protection Bureau, Official Interpretation to 26 C.F.R. § 1026.17(c)(2), *available at* http://www.consumerfinance.gov/eregulations/1026-17/2013-28210#1026-17-c-2. While there may be grounds for legitimate dispute over whether the IRS schedules Plaintiff cites are the best, reasonably available information for making a repayment estimate, Regulation Z makes it clear that it is the information available to the creditor that determines whether a form is compliant, not the information available to the consumer.

Thus, while Defendant might base its repayment estimates on information provided by its customers, the truth or falsity of that information has no bearing on the ultimate determination of whether that information is the best information reasonably available at the time of the disclosure. Therefore, it does not undermine Plaintiff's ability to represent the class. And in any event, Plaintiff's deposition testimony is not fundamentally contradictory: any inconsistencies are more indicative of a commonplace lapse of recollection, not a propensity to lie that would undermine credibility. The Court concludes that Plaintiff's testimony about his expectation of when he would receive his tax refund was not so inconsistent as to raise questions about his credibility sufficient to undermine his adequacy as a class representative.

Defendant next argues that Plaintiff falsely stated that he had first spoken with his attorney about Defendant's loan products in March 2014, when in fact the complaint in this case had been filed in February. *See* Response at 3. Defendant argues that this undermines Plaintiff's credibility and therefore his ability to fairly and adequately protect the interests of class members. But even assuming that Plaintiff intentionally misstated the date he first spoke with his attorney about bringing this lawsuit (Plaintiff argues that his recollection was a negligent

10

misstatement at most, *see* Reply at 5–6), Defendant has failed to point out why this misrepresentation relates to material facts at issue in this case.

Plaintiff and Defendant agree that the commonality, typicality, and numerosity requirements of Rule 23(a) have been met in this case. The Court is not persuaded that the named Plaintiff will not fairly and adequately protect the interests of absent class members. The Court concludes that the requirements of Rule 23(a) have been met; therefore, it will analyze whether this class action also meets the additional requirements found in Rule 23(b)(3).

2. Rule 23(b)(3) factors

In order to proceed under Rule 23(b)(3), a Plaintiff must show that "questions of law or fact common to the members of the class predominate over any questions affecting individual members" ("predominance") and that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." ("superiority").

a. Predominance

At the certification stage, Plaintiff needs to show that class-wide issues predominate over individualized questions. FED. R. CIV. P. 23(b)(3). This standard is "far more demanding" than the Rule 23(a) commonality requirement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997). To meet this requirement, a Plaintiff must show that the same evidence can establish a prima facie case for each class member. *Garcia v. Tyson Foods, Inc.*, 255 F.R.D. 678, 690 (D. Kan. 2009).

Plaintiff argues that because Defendant's liability under TILA is determined by the adequacy of disclosures and other information in its loan documents, each class member's prima facie case will be established by the same evidence. Motion to Certify at 10. Plaintiff also points

out that TILA disclosure claims are frequently litigated as class actions in this district. *Id.* at 11 (citing cases).

The Court agrees that class-wide issues predominate over individual issues in this case. Plaintiff asserts (and Defendant does not dispute) that all members of the proposed class encountered Defendant's standardized loan agreement forms before obtaining "holiday" or "instant cash" loans. Whether these forms are inadequate will resolve the question of liability on a class-wide basis in one stroke. The Court concludes that the predominance requirement has been met.

      b. Superiority

Plaintiff argues, and this Court agrees, that a class action is a superior method for resolving class members' claims. Actual or statutory damages for TILA violations in this case for individual class members will likely be small, meaning individual litigation of claims is costly and therefore unlikely to occur. *See* 15 U.S.C. § 1640(a). Likewise, concentrating all claims arising from Defendant's loan forms will conserve judicial resources. The Court is unaware of any issues or potential difficulties in managing this particular class.

## CONCLUSION

Plaintiff's putative class action meets the requirements of FED. R. CIV. P. 23(a) and 23(b)(3). The Court therefore ORDERS:

(1) Plaintiff's Motion to Certify is GRANTED as to the following class:

> All natural persons who entered into "holiday loans" or "Instant Cash" loans, or both, with Tancorde Finance, Inc., on or after February 2, 2013.

(2) The class claim is:

> Defendant's alleged violation of the Truth in Lending Act and Regulation Z arising from its extension of "holiday" and "instant cash" loans.

(3) Counsel for Plaintiff is appointed as class counsel under Rule 23(g);

(4) Counsel for Plaintiff will submit a form notice to the Court for approval by January 26, 2015;

(5) Defendant may file objections to Plaintiff's proposed notice by January 30, 2015;

(6) After the Court approves a notice to class members, the Parties will meet and confer with Magistrate Judge Khalsa and agree on deadlines for providing notice, receiving opt-out replies from class members, and any other relevant pretrial matters.

*/s/ James A. Parker*

SENIOR UNITED STATES DISTRICT JUDGE